UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RICKY SOUCY, SR,                                    )
                                                   )
          Petitioner,                              )
                                                   )
v.                                                 )  Civil No. 09-651-B-W
                                                   )
WARDEN, MAINE STATE PRISON,                        )
                                                   )
          Respondent                               )

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Ricky Soucy, Sr., is in pursuit of 28 U.S.C. § 2254 relief from his state convictions for

criminal sexual misconduct with his daughter, conduct which commenced at the time she was

eight-years-old, escalated when she was ten, and stopped shortly before she disclosed the abuse.

Soucy's § 2254 contentions are all framed as ineffective assistance of counsel claims apropos

trial counsel[1] and were for the most part adequately exhausted in the state courts.  After a

thorough review of the state court record I recommend that the Court deny Soucy § 2254 relief.

*Discussion*

Addressing Soucy's consolidated sentence appeal and appeal of the judgment of

conviction, the Maine Law Court summarized the background of his prosecution in the following

paragraphs:

> Soucy was charged by indictment with two counts of gross sexual assault
> and three counts of unlawful sexual contact, and the indictment characterized

---

[1]      In his attachment to his form 28 U.S.C. § 2254 motion Soucy commences by faulting his post-conviction counsel for his representation in that proceeding, primarily after his attorney had filed his motion for a certificate of probable cause with the Maine Law Court.   He also includes post-conviction counsel in assessing fault for not producing certain witnesses and evidence. However, Congress has made it clear: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i).

Soucy as a "dangerous sexual offender" based on a prior conviction of gross sexual misconduct, to which Soucy stipulated at the start of trial.

The following evidence was produced at trial. The victim is Soucy's daughter, who was thirteen at the time of trial in 2004. Soucy and the victim's mother divorced in 1995, and the victim visited Soucy at his house nearly every weekend and on holidays. When the victim was eight years old, she woke up with her hand inside Soucy's pants with no recollection of how her hand got there. The touching continued, first with Soucy placing the victim's hand on his penis and later with Soucy touching the victim's vagina. When the victim was about ten years old, Soucy subjected her to sexual intercourse. The incidents of sexual touching occurred over a hundred times, and Soucy had sexual intercourse with the victim at least five times. In 2003, the victim disclosed Soucy's behavior to her mother.

Soucy was convicted of the two Class A gross sexual assault charges and the three Class B unlawful sexual contact charges.

State v. Soucy, 2006 ME 8, ¶¶ 3-5, 890 A.2d 719, 721 (footnote omitted).

**Parameters of 28 U.S.C. § 2254 Review**

This court will not grant a petition for habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the Maine court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).  The Maine courts' factual findings "shall be presumed to be correct" and Soucy bears the burden of disproving these factual findings by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  See also O'Laughlin v. O'Brien, 568 F.3d 287, 298 (1st Cir.2009); McCambridge v. Hall, 303 F.3d 24, 34-35 (1st Cir. 2002).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the

'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

Congress has provided that there is a gate-keeping exhaustion of state-law remedies requirement with regards to federal habeas claims of state court determinations. See 28 U.S. C. § 2254(b)(1)(A). Furthermore: "To provide the State with the necessary 'opportunity,'" to review his or her claims "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citation omitted); see also Pike v. Guarino, 492 F.3d 61, 71 (1st Cir. 2007); Jackson v. Coalter, 337 F.3d 74, 85-87 (1st Cir. 2003).

With respect to the State's burden, in order for the state decision to be accorded § 2254(d) deference, the state court must have adjudicated the federal claim on the merits. See Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010) ( "A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.' Teti v. Bender, 507 F.3d 50, 56-57 (1st Cir.2007)."). Although the Maine Law Court's determination denying the certificate of probable cause is gaunt, it "was neither a disposition on procedural grounds nor a summary disposition in which the court simply remained silent on the issue[s]." Id. at 53.

All of Soucy's claims are tethered to the notion that his counsel failed to meet the Sixth Amendment standard for delivering effective assistance. The First Circuit recently summarized the Strickland v. Washington, 466 U.S. 668 (1984) standard in a 28 U.S.C. § 2254 case:

      Strickland constructs a two-part algorithm for assessing claims of ineffectiveness. Under this algorithm, a defendant must show both that counsel's performance was deficient and that it prejudiced his defense. 466 U.S. at 687. An inquiring court need not necessarily address both parts of this algorithm; if the court determines that the defendant does not satisfy either part, it may stop there. Id. at 697.

      To establish deficient performance, a defendant must show that, considering all the circumstances, "counsel's representation fell below an objective standard of reasonableness." Id. at 688. To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. This prejudice analysis is the same as the prejudice analysis more generally used in connection with procedural defaults. See Prou[v. United States], 199 F.3d [37] 49 [(1st Cir. 1999)].

Janosky v. St. Amand, 594 F.3d 39, 45 (1st Cir. 2010) "It is, of course, settled law that a court must weigh the strength of the evidence in determining whether a sufficient showing of prejudice has been made under Strickland." Id. (citing United States v. De La Cruz, 514 F.3d 121, 140-41 (1st Cir.2008) and Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir.1999)).

**Section 2254 Claims**

***Ground one***

      Soucy's first 28 U.S.C. § 2254 ground has two components.  First he faults counsel for not appealing the conviction but only appealing the sentence.  (Sec. 2254 mot. at 5.)  In his attached memorandum he faults trial and appellate counsel for failing "to perfect a direct appeal."  (Sec. 2254 Attach. at 4.)  He maintains that he was "so prejudiced" by counsel's appellate brief he might as well have not filed it at all. (Id.)  Noting that counsel had "objected at trial several times to the STATE's introduction of evidence of the defendant's past criminal record, therein preserving this issue for appeal," Soucy complains that on direct appeal counsel argued that the trial justice made statements to the jury that may have rushed the verdict.  (Id.)

In his reply memorandum Soucy revisits this ground focusing on an argument that the judge rushed the jury. He has included an affidavit pertaining to the timing of the jury verdict averring that the jury left the courtroom at 1:00pm (Soucy Aff. ¶1);  Soucy and his attorney went outside to smoke (id. ¶ 2); they were called back into the courtroom within fifteen minutes (id. ¶ 3); at about 1:30 p.m. the court addressed counsel's new trial motion  and the justice deferred ruling on it until sentencing (id. ¶¶ 4, 5);  the trial justice stated that "she was going in" and advise the jury that it was getting late (id. ¶ 6); at about 3:30 the trial justice left the courtroom and shortly thereafter "returned with the jury" (id. ¶ 7); and then the justice pretended to be surprised that the jury had a verdict (id. ¶8).

The problem regarding this subpart of Soucy's first § 2254 ineffective assistance of counsel claim is that there is no question that appellate counsel raised this non-sentence-related challenge on direct appeal.  He argued:

> The jury retired to deliberate at 1:00 p.m. and at 3:58 p.m.[]the trial judge called the jury to appear in court to retire for the day.  Defendant raises this issue on a appeal asserting that the closing of the courthouse rushed the jury to convict.
> "THE COURT:          Have a seat ladies and gentlemen.  Thank you.
>           We are going to recess for the evening, ladies and gentlemen.  This Court closes at four and because of the budget constraints on the Judicial Branch, we have no ability whatsoever to pay overtime for people who would have to stay after four.  So we will recess for the evening.
>           Let me give you the same instructions I gave you last night.
> THE JURY OFFICER:          Excuse me, Your Honor.  They have reached a verdict.
> THE COURT: Is that correct; Madame foreperson:
> A.      Yes."
> [T.3 at 2]
>           The jury returned the verdicts of guilty on all counts [T.1 at 277-278] and the jury was polled [T.1 at 278-293].
>           Rule 24(e) of the Maine Rules of Criminal Procedures leaves the question of the separation of deliberating criminal juries to the discretion of the presiding judge.
> ….
>           In this case, the court due to administrative constraints interrupted the jury at approximately 4 o'clock.  Even after an appreciation of budget constraints on

5

the judiciary, one cannot substitute the need for separation of the jury deliberation
from judicial comment or influence.

     The trial court, in its explanation, characterized the budget problem for the
common citizen by explaining overtime to the jury.  Balanced against defendant's
right to a fair trial, these comments can only be viewed as prejudicial and as a
rush for the jury.  This issue was raised and preserved [T.3 at 2], [T.2-48].

(Appellant Br. at 17-18, State App. B.)

With regards to the challenge to the conviction the Law Court stated:  "Soucy also
appeals from the judgment of conviction on the two counts of gross sexual assault and the three
counts of unlawful sexual contact. We affirm the convictions without discussion because Soucy's
arguments have no merit." State v. Soucy, 2006 ME 8, ¶ 2, 890 A.2d 719, 721.  The Law Court
observed apropos this challenge, "the record does not demonstrate that the court rushed the jury
to a verdict."  2006 ME 8, ¶ 2 n.2, 890 A.2d at 721 n.2.

I note that in his reply brief Soucy conveys a belief that there was something very
irregular about the state of the transcripts of the time between the commencement of
deliberations and the return of the verdict.   Soucy seems to believe that the trial justice actually
conferred with the jury without counsel present. He speculates that the transcripts have been
altered.   He believes that this is new evidence supporting a First Amendment denial of access
court claim.  Even if he could somehow resurrect a challenge based on this speculation in this
federal forum, there is absolutely no basis in the record to support such a theory of events. I have
read the unified transcript filed by the State; all the transcript excerpts Soucy has filed with his
reply are part of the state record submitted by the State on which I rely in addressing this claim.[2]

The second aspect to Soucy's first ground is his assertion that his attorney failed to keep
prejudicial evidence about a prior conviction from the jury in violation of the state and federal

---

[2]     Before the jury went to deliberate the justice counseled them: "You should … not be concerned about how
long it takes to reach a verdict.  Some verdicts can be returned quickly, others take longer.  It depends how complex
you find the determination of credibility and the facts to be."  (Trial Tr. at 272-73.)

rules of evidence.  At the beginning of trial, counsel stipulated to the prior convictions for

sentencing purposes:  Counsel explained:

> The prior conviction is stipulated.  To my understanding that does qualify him as
> a dangerous sexual offender pursuant to the law and my understanding is, along
> with that stipulation, I have discussed with [the prosecutor] my motion in limine
> to exclude reference to Ricky Soucy's prior conviction and Mr. Rucha has taken
> the necessary steps to inform the witnesses not to mention the prior offense.

(Trial Tr. at 2.)   The justice followed up: "Okay. So, the clerk reads the charge on Count 1 and

you will stop after the age of 14 years and not read that second part, same thing on Count 3."

(Id. at 4.)  There was no mention of the prior conviction in the court's final instructions.  (Id. at

267-71.)   Soucy's claim that the jurors were exposed to the fact of the prior conviction is simply

not supported by the record.

I also note with respect to the § 2254(b)(1)(A) exhaustion inquiry that Soucy did not

present this claim as an ineffective assistance of counsel ground in front of the post-conviction

court, although he did challenge the use of the prior-conviction at sentencing.  The State seems

content in this case to assume that Soucy's efforts in his pro se motion to reconsider the denial of

the application for a certificate of probable cause is adequate exhaustion.  Based on the above

discussion of the lack of merits of this ground, it is unnecessary to dwell on this question.

### Ground two

The second 28 U.S.C. § 2254 claim pressed is that  Soucy was unable to effectively

assist in his defense before or during trial because he was under the influence of narcotics and his

wife was in an accident during the trial.  He maintains that he was not competent to stand trial,

counsel knew this, and failed to seek a continuance or a psychiatric evaluation.  Citing Baldwin

v. Reese, 541 U.S. 27, 29 (2004),  the State points out that this claim does not seem to have been

carried forth in the pleadings to the Maine Law Court seeking review of the denial of post-

conviction relief.  In his pro se motion for reconsideration of the denial of a certificate of

probable cause Soucy does not mention his medication but he does fault counsel for not moving

for a continuance when Soucy's wife got into a car accident during trial.  (Pro se Mot.

Reconsider at 12-13, State App. D.)   I proceed to review both aspects of Soucy's competency

contentions, as:  "An application for a writ of habeas corpus may be denied on the merits,

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

State."  28 U.S.C.A. § 2254(b)(2).

     With respect to the medication issue the post-conviction judge concluded:

> Competency
>      Trial counsel met with the petitioner several times before trial. Trial
> counsel was not aware at any time that the petitioner was under the influence of
> drugs or was taking prescription medicine.  The petitioner exhibited no signs of
> impairment and did not inform trial counsel that the petitioner was taking
> medicine.  In fact, the petitioner assisted trial counsel at trial.  The petitioner's
> testimony at the hearing on the petition for PCR that he was "pretty confused"
> does not require a finding of incompetence or impairment.

(Post-conviction Dec. & Order at 2.)

     This conclusion is entirely supported by the transcript of the post-conviction hearing.

Trial counsel testified that he did not recall being aware that Soucy was on medication and that if

he had been informed of this it would have been his practice to make a note of this.  (Post-

conviction Tr. at 42-43.)   He explained that in federal court he would have been mandated to tell

the judge about the medication and, while it is not necessarily mandated in state courts, it was

oftentimes his practice to follow this protocol.  (Id. at 43; see also id. at 48.)  He further affirmed

that in his view Soucy was competent to help with the defense and that he did in fact provide

assistance over the course of the proceedings.  (Id. at 43; see also id. at 48.)   On cross-

examination counsel was asked if Soucy had never told him that he was on medications (id. at

47) and counsel confirmed that he had not (id. at 48).  He also confirmed that he did not detect

signs that Soucy was under the influence during the trial or during trial preparation.  (Id. at 48.)

For his part, Soucy testified that he was taking methadone at the time of the trial, had

been taking that medication for approximately two years, and prior to that he was on Vicodin for

eight years.  (Id. at 67.)  Asked if he knew what was going on during his trial, he responded that

he "was pretty confused." (Id.)  He explained that he was taking methadone for back pain and

that he took 10 milligrams four times a day as he had been doing for years.  (Id. at 68.)   In other

words, he was not taking elevated dosages.  (Id.)   Soucy did maintain that he was not fully

functional when so medicated and he had a "tendency to not comprehend."  (Id. at 68-69.) On

cross-examination Soucy was asked if he ever told his attorney that he was taking methadone.

(Id. at 74.) Soucy responded that he had in the past and that he had known his attorney for a long

time.  (Id. at 74-75.)   Asked if he told his attorney on the trial days that he was taking

methadone, Soucy answered: "No, I would've had no reason to tell him that."  (Id. at 75.)

Based on this review, I conclude that this competency ground should be denied  on the

merits (or lack thereof) pursuant to 28 U.S.C.A. § 2254(b)(2).

With regards to the impact of his wife's car accident Soucy explained during the post-

conviction hearing:

> [O]n the second day, I asked to leave because the clerk of the court had come in
> and told me that my wife was in a serious car accident, she was critically injured,
> and I asked my attorney if I could leave and go see what was going on with her,
> and he denied me that I could leave.  He said I couldn't.  I had to stay.  Then an
> officer came in, talked to me about it during the court session while the jury was
> here, and I was pretty distraught from everything.

(Post-conviction Tr. at 68.)  This is the extent of Soucy's factual development in the state court

as to the impact of the news of the car crash on him and his attorney's performance regarding

this concern.  See 28 U.S.C. § 2254(e).  So, assuming that this aspect of his claim is fully

exhausted  due to his brief mention of the issue in his <u>pro se</u> motion for reconsideration, he is not

entitled to further proceedings in this court on this aspect of his competency ground.  Soucy's

attorney's insistence that he must remain at trial is facially valid without a better development by

Soucy of the nature of the interference with his participation in his trial than his being

"distraught" by the news of the accident.

***Ground three***

Next I address Soucy's assertion that counsel was ineffective for allowing State witness

Dr. Ricci to testify without adequately cross-examining him and without calling another

countervailing expert or obtaining a second opinion on Ricci's report.[3]  In his reply

memorandum Soucy maintains that the failure of the defense to call a countervailing expert led

the jury "to only draw one conclusion that the victim was abused."  (Reply Mem. at 2.)  Soucy

insists that the victim testified to numerous sexual encounters but the physical examination

established she was a virgin.  Soucy's closing request in his reply memorandum is:

> I am not a lawyer, I have a very limited education.  Therefore, I must
> respectfully request that the honorable court answer one question for me even if
> the court does nothing else.  Can someone please explain to me how I could have
> had sexual intercourse with my daughter even once never mind 5 times and yet
> she still had her hymen, she is still a virgin.  How?  My daughter for whatever
> reason testified that I did not penetrate her with my finger only during sexual
> intercourse and I am convicted on all counts, how?

(Reply Mem. at 9.)

First of all, the Maine Law Court rejected Soucy's sufficiency of the evidence of

penetration challenge on direct appeal, stating, "[c]ontrary to Soucy's contentions, the evidence

was sufficient to prove penetration"   2006 ME 8, ¶ 2 n.2, 890 A.2d at 721 n.2. With respect to

---

[3]      My discussion in this section addresses the part of Soucy's Fourth Ground that faults counsel for not
presenting a witness  that could have testified that the tear of the hymen could have been caused in another manner
than sexual abuse.

the related ineffective assistance of counsel claim raised in the post-conviction proceedings, the

superior court found and reasoned:

> Dr. Ricci
> Trial counsel chose not to pursue an independent review of Dr. Ricci's
> report or a second evaluation of the victim. Trial counsel had been involved in
> cases in which Dr. Ricci was an expert witness. Trial counsel understood the
> Ricci report and did not require an expert to explain the report. Trial counsel
> determined that a request for a second exam of the victim would be more invasive
> than reasonable.
> On cross-examination, trial counsel highlighted that Dr. Ricci concluded
> only that his findings were "consistent with sexual abuse." (Trial Tr. at 182.) Dr.
> Ricci also agreed that his findings were consistent with penetrating trauma, which
> could be caused by something other than sexual abuse. (Id. at 183-84.)
> There is no evidence in this record that a second evaluation or an
> independent review of Dr. Ricci's report would have resulted in evidence
> favorable to the petitioner.

(Post-conviction Dec. & Order at 2 -3.) The court had earlier found: "The petitioner also

advised trial counsel that the victim would not testify that the conduct occurred. The victim did,

in fact testify that the petitioner committed the conduct alleged in the indictment. (Trial Tr. at

10, 14-27.)" (Id. at 2.)

The post-conviction court's findings are entirely in keeping with the record. The post-

conviction hearing transcript reveals that trial counsel made a well thought-through strategic

choice not to seek a second evaluation and to not pursue an independent review. Trial counsel

was frank in admitting that he could have sought an independent review of the report but felt that

it would not add to his understanding of the Ricci findings and that he could have moved the

court for an independent evaluation but felt that, because of the invasiveness of a second

examination, the court would not likely grant such a request. (See Post-conviction Tr. at 22-24.)

He also testified that he was making these decisions in the context of Soucy's "pretty forceful"

representations to him that Soucy was confident that "the victim was not going to take the stand

and say it happened." (Id.) Questioned on his acceptance of this strategy given the prior

documented statements of abuse made by the victim, counsel said he appreciated the impeachment value of those statements should the victim recant but explained his experience that "boy, oh boy, it goes pretty good in a sex case if that person gets on the stand and doesn't say it happened. I … feel pretty comfortable as a criminal defense lawyer that I can then battle the court, if you will, on those statements." (Id. at 25.)   He conceded "that the sole source" of his "knowledge that the victim may not say anything came from the defendant himself." (Id. at 26.)[4] He remarked, "you don't have a victim reevaluation on an exam when she may not testify" and expressly affirmed that this was a trial tactic. (Id. at 26-27.)

With regards to the benefit of a third party review, counsel specified:  "I could've had a third party review that examination.  I understood what Ricci was saying.  I've dealt with his exams before.  He was saying there was a hymen tear of the lower quadrant of a young lady's vagina in a sex case." (Id. at 27.)  He indicated that the prospect of proving this penetration was due to a different type of event  "didn't come out very well in this case." (Id.)  He elaborated:

> [I]'m trying to recollect if Ricci's statement said it was a hundred percent corroborative or whether it just was merely consistent, and, so, we had that sort of interplay that I would've had to deal with, and I felt, as a trial tactic, that was about as good as I was going to be able to do with Dr. Ricci and hope that girl, in fact – that what was being told to me was accurate, that the girl may not say what would lead to a preliminary charge of unlawful sexual contact or gross sexual assault.

(Id. )

During post-conviction cross-examination it was further clarified through the State's question that the report indicated that the victim's general physical examination showed nothing unusual;  that Dr. Ricci  found on the internal examination the healed tear and  that counsel had cross-examined Dr. Ricci and brought out that he could not put an age to the healed tear; and that

---

[4]     Soucy confirmed that he told his attorney that he did not believe that Brenda would testify against him. (Id. at 72, 79.)

Dr. Ricci testified that this tear, in fact, could be a result of sexual intercourse but that there could have been other causes.  (Id. at 49-51.)

As Strickland notes, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  466 U.S. at 690.[5]   Certainly the post-conviction court's conclusion on this score was not an unreasonable application of Strickland principals to the facts of Soucy's case.  Williams, 529 U.S. at 413.  Also fatally undermining this ground is that in neither the post-conviction court record nor in his § 2254 pleadings does Soucy present any evidence of what a second-examination or an expert consult might have positively generated for the defense; Soucy relies purely on his speculation.

***Ground four***

Finally, Soucy faults trial counsel for not presenting--through witnesses or Department of Human Services documentation--evidence that would establish a routine or practice of the victim of lying or making up stories.

As to this challenge, the post-conviction justice reasoned:

Exculpatory Witnesses
    The petitioner testified at the hearing on the petition for PCR that his stepchildren should have been called to testify about his conduct at the house and to show the absence of sexual behavior on his part.  Those potential witnesses did not testify at the hearing on the petition for PCR.  There is no evidence in this record with regard to whether these witnesses were available or what these witnesses would have testified about, except for the defendant's vague generalizations and his speculation that the witnesses would have helped.
    Trial counsel did not request a Clifford order with regards to records from the Department of Health and Human Services because he had no reason to believe they would be helpful.  No such records were produced at the hearing on the petition for PCR.  There is nothing in this record to show such records would have been helpful to the defendant.

(Post-conviction Dec. & Order at 3.)

---

[5]    The post-conviction court observed: "Heightened deference is accorded in reviewing strategic and tactical decisions by trial counsel.  See True v. State, 457 A.2d 793, 796 (Me. 1983).  The question is whether the strategy has been shown to be 'manifestly unreasonable.'  Id."  (Post-conviction Dec. & Order at 5.)

Thus, with regards to the prejudice of not seeking witness testimony or a Clifford order, the post-conviction court stresses that no supporting records or would-be witnesses were produced by Soucy as part of the post-conviction hearings.  This evidentiary lapse in front of the state court (repeated here) is fatal to Soucy's final § 2254 plaint.  See 28 U.S.C. § 2254(e).

Briefly on the merits of this claim, I note that trial counsel did explain his familiarity with Clifford orders as he was the attorney that convinced Justice Clifford to sign an order for the Department of Health and Human Services to turn over records.  (Post-conviction Tr. at 45.)   He testified that he did not know of any reason in Soucy's case to pursue such an order.  (Id.) He explained the tactical factors at play when determining whether to make such a request and opined:  "And the whole trick there is you're getting material and you're telling the court that you need material, that you don't know what it is, but you have to tell the court what it is you want it for even though you don't know what it is, and, so, there's a problem with Clifford orders."  (Id. at 46.)  He clarified:

> I didn't do it in this case, and I didn't … see a need in this case for it.  I didn't have grounds to ask for a Clifford order.  I didn't think there would be anything there that I knew of.  I didn't have any reason to believe there was anything with DHHS.
>                     …
> …I don't just ask for a carte blanche Clifford order with the court.  I try to go in with give and take of material.  And with the investigator, I hadn't come up with anything to ask for, but there can be some nice little tidbits of defense work in those areas.

(Id. at 47.)

With regards to the issue of witnesses, during the post-conviction hearing Soucy was asked which witnesses he thought counsel should have called in support of the defense.  (Id. at 71.)

A.      Well, I believe he didn't call any of my stepchildren that were living with me at the time, which would be Nichole Moreau, Patrick Moreau, and Robby Moreau.

Q.      And how do you think that would have helped you?

A.      I would think that would help as far as my conduct goes in the house as far as being a parent, and my action, whether I was ever undressed in the house around the children or anything to that aspect if I ever had locked doors or anything like that going on in the household.

Q.      Do you think that these people would've shown the absence of sexual behavior?

A.      Yes, I believe so.

….

Q.      And as best you recall, none of these people were called as witnesses?

A.      No.

Q.      And they weren't interviewed as well?

A.      No.

(Id.)      On cross-examination Soucy represented that his attorney knew that Soucy wanted his three step-children interviewed. (Id. at 76.)  Asked if there was anyone else, Soucy responded:

> Well, yeah, as far as character witness goes, yes I told him I had 600 customers that I dealt with weekly that he could've brought any of them in. And I'd been around kids. I had keys to people's houses. He could have brought anybody in as far as character reference goes and how I was and how people treated me.

(Id. at 77.)

Even if this Court were to conduct de novo review of this articulation of the claims against counsel, Soucy would not be entitled to relief under Strickland. Counsel clearly articulated his reasons for not pursuing a Clifford order in Soucy's case. See Strickland, 466 U.S. at 690. Whether or not he expressly considered calling the three step-children and a selection of Soucy's satisfied customers, on Soucy's own explanation of what these witnesses would testify to, it cannot be said that such testimony would have generated "a reasonable probability that … the result of the proceeding would have been different," given "the strength of the evidence" of the State's case at trial. Janosky, 594 F.3d at 45. At trial the State did not need to and was not attempting to prove anything about Soucy's character or actions outside his

relationship with his daughter and the testimony of these outsiders to that nexus would not have properly swayed the jury's consideration of the key testimony concerning that relationship given by the victim, the victim's mother, Soucy's wife who lived in the same household during the alleged abuse, and Soucy.  What is more, there was some obvious danger in pursuing this type of testimony given the fact that the prosecutor expressly reserved the right to attempt to cross-examine Soucy on the stipulated-to prior conviction if Soucy were to testify and "open the door by making some references about whether he would or wouldn't do something like this."  (Trial Tr. at 3.)

## CONCLUSION

For these reasons, I recommend that the Court deny Soucy 28 U.S.C. § 2254 relief.  I further recommend that a certificate of appealability should not issue in the event Soucy files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within *fourteen (14) days after the filing of the objection.*

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

May 25, 2010

16